1

2

3

4

5

6

7

8

9               UNITED STATES DISTRICT COURT

10              EASTERN DISTRICT OF CALIFORNIA

11

                     ----oo0oo----

12

13  MICHAEL FULLER,
                                NO. CIV. S-05-0849 FCD DAD
14          Plaintiff,

15      v.                      MEMORANDUM AND ORDER

16  WAL-MART STORES, INC.,

17          Defendant.

18                   ----oo0oo----

19      This matter is before the court on defendant Wal-Mart

20  Stores, Inc.'s, ("Wal-Mart") motion for summary judgment or, in

21  the alternative, summary adjudication.  Defendant also moves to

22  strike plaintiff's prayer for punitive damages.  Plaintiff

23  Michael Fuller ("Fuller") opposes the motion.  For the reasons

24  set forth below,[1] defendant's motion for summary judgment or

25

26

27

28
        [1]    Because oral argument will not be of material
    assistance, the court orders this matter submitted on the briefs.
    E.D. Cal. Local Rule 78-230(h).

summary adjudication is DENIED and defendant's motion to strike is GRANTED.[2]

**BACKGROUND**[3]

Plaintiff Fuller commenced his employment with defendant Wal-Mart on April 30, 2003.  (SSUF ¶ 1).  Plaintiff was hired as a courtesy clerk and was responsible for caring for customers, greeting customers, and assisting his co-workers.  (SSUF ¶ 2).  He primarily worked outside rounding up carts.  (SSUF ¶ 2).  Plaintiff worked on nearly a daily basis with another courtesy clerk, Randy Brazil ("Brazil").  (SSUF ¶ 3).

Plaintiff asserts that Brazil's offensive behavior toward him began from the first time they worked together.  (SSUF ¶ 4).  On that day, while rounding up carts, Brazil asked plaintiff why "Blacks and Hispanics bump up their music in their cars."  (SSUF ¶ 4, RUF ¶ 2).  Plaintiff contends that Brazil made the comment with a nasty look on his face.  (SSUF ¶ 4).  Plaintiff also contends that almost immediately after the incident, he attempted to report the offensive conduct to his manager, Mehri Azad

---

[2]    The court notes defendant's objections to plaintiff's untimely filing of his opposition and supporting materials.  In this instance, the court will consider plaintiff's filings.  However, plaintiff is reminded that he must comply with the requirements for filing set forth in the applicable Local Rules.

[3]    For the purposes of this motion, the court recounts plaintiff's version of the facts.  (Pl.'s Separate Stmt. of Material Undisp. Facts in Opp'n to Def.'s Mot. for Summ. J. ("SSUF"), filed June 23, 2006).  While plaintiff titled this document as a separate statement of undisputed facts, the court interprets this document as a separate statement of disputed facts filed pursuant to Eastern District Local Rule 56-260(b).

Where the facts are undisputed, the court refers to the parties' statement of undisputed facts.  (See Pl.'s Response to Def.'s Separate Stmt. of Material Undisp. Facts ("RUF"), filed June 23, 2006.

("Azad") and to an assistant manager, Kevin Lancaster ("Lancaster") who was also in the office.  (SSUF ¶ 5).  He reported that Brazil was making derogatory comments about his race and another race.  (Dep. of Michael Fuller ("Fuller Dep."), attachment 1 to Decl. of Jesse S. Ortiz III in Opp'n to Mot. for Summ. J ("Ortiz Decl."), filed June 26, 2006, 61:5-7).  Plaintiff asserts that Azad told him she would be with him in a minute and then left the office.  At that time, Lancaster, plaintiff's direct supervisor, remained in the office and advised him to be cool and think nothing of the situation.  (SSUF ¶ 5).

Plaintiff contends that about two days after this first incident, Brazil repeated the offensive comments.  (SSUF ¶ 5). Plaintiff asserts that he again told Azad about the comments and that she responded that she was too busy and that plaintiff should speak to assistant manager, Mitch Hayter ("Hayter"). (SSUF ¶ 6).  Hayter responded that he couldn't do anything if he didn't hear Brazil make the comments and if he didn't have an "dirt" on him.  (SSUF ¶ 6).  Plaintiff then asked Hayter what he should do, and was advised that nothing could be done.  (SSUF ¶ 6).

Plaintiff asserts that Brazil continued with his racially derogatory comments every time they worked together.  (SSUF ¶ 7). Plaintiff contends that because Brazil's conduct was continuous, he is unable to recall the specific racially offensive comments. (SSUF ¶ 7).  However, plaintiff does recall that Brazil asked him questions such as "why for Black women wear weaves in their hair?", "why do Black women have their bootys out?" and that Brazil made a comment that black people are not able to control

3

1   or supervise their children.  (RUF ¶¶ 1-2; SSUF ¶ 7).  No one

2   else heard Brazil ask the questions or make the comments that

3   plaintiff found offensive.  (RUF ¶ 4).  Plaintiff also asserts

4   that Brazil was lying to managers about plaintiff's conduct.

5   (Fuller Dep. 77:1-4).  In or around June 2003, plaintiff

6   requested to have his schedule switched to avoid working with

7   Brazil, but his request was denied.  (SSUF ¶ 8).  Plaintiff

8   attempted to ignore Brazil's comments and did not further advise

9   management because his previous complaints were ignored or

10  brushed off as unimportant.  (SSUF ¶ 9).

11       In or around August 2003, Brazil called plaintiff and

12  another employee "niggers."  (SSUF ¶ 11).  Immediately

13  thereafter, plaintiff advised Azad of Brazil's conduct.  (SSUF ¶

14  11).  Plaintiff also told Azad that Brazil was accusing him of

15  stealing Wal-Mart's time by not working when plaintiff was

16  actually doing "customer carryout."  (Fuller Dep. 78:23-79:6).

17  Plaintiff asserts that Azad knew that plaintiff was doing

18  "customer carryout," and wondered why Brazil was engaging in such

19  conduct.  (Fuller Dep. 78:5-7).  Azad advised plaintiff to fill

20  out a grievance form and detail what had transpired.  (SSUF ¶

21  11).  Plaintiff filled out a grievance form and also wrote a

22  letter, which he attached to the grievance form and gave to Azad.

23  (Fuller Dep. 79:24-80:12; 87:17-22).  Azad then told plaintiff to

24  return to work.  (Fuller Dep. 88:11-12).  Plaintiff asserts that,

25  notwithstanding the filing of the written grievance, Brazil's

26  racially offensive conduct continued up through his termination

27  from Wal-Mart.  (SSUF ¶ 11).

28

In or around the last week plaintiff's employment with Wal-Mart, plaintiff again complained to Azad about Brazil's conduct. Plaintiff asserts that he was warned by Azad that if he continued to complain to her about the problems with Brazil, he would be terminated.  (SSUF ¶ 15).

During the course of his employment with Wal-Mart, plaintiff was absent 26 times and tardy 20 times.  (RUF ¶ 24).  At all times during plaintiff's employment, Wal-Mart had in place an attendance policy, which, by plaintiff's understanding, provided that an employee faced termination if he was either absent or tardy for three days without justification.  (SSUF ¶ 14). Plaintiff was absent from work more than three times.  (RUF ¶ 17).  He was warned by his supervisors and Azad to stop being late and absent from work.  (RUF ¶ 18).  On July 19, 2003, plaintiff received a final warning for attendance problems, called a Decision Making Day Coaching, from Hayter for failure to call or appear for work on July 18, 2003 and for appearing six hours late for his shift on July 19, 2003.  (RUF ¶ 20). Plaintiff knew that he could be terminated after he received a Decision Making Day Coaching for excessive absenteeism.  (RUF ¶ 21).  Plaintiff was absent at least five times after he received a final written warning in July, until he was terminated.  (RUF ¶ 23).  Plaintiff contends that he missed work and was tardy because of the stress he experienced as a result of Brazil's conduct.  (SSUF ¶ 14).  Plaintiff also contends that he told Azad on two different occasions that he was late and absent because of the stress caused by Brazil and that Azad did nothing to correct the situation.  (SSUF ¶ 14; Fuller Dep. 138:20-144:11).

Plaintiff also contends that he told Lancaster the same thing.
(Fuller Dep. 150:23-25).

On October 9, 2003, plaintiff was scheduled to work. (SSUF ¶ 16). However, because of his fear of having to work again with Brazil, plaintiff was approximately two hours late for work. (SSUF ¶ 16). After plaintiff clocked in and began working, Brazil began harassing plaintiff. (SSUF ¶ 16). Plaintiff immediately complained to Azad about Brazil. (SSUF ¶ 16). Azad ignored plaintiff's complaint and instead asked why he was late. (SSUF ¶ 16). Plaintiff responded that it was because of Brazil's harassment. (SSUF ¶ 16). Plaintiff was directed to remain in the break room, and after approximately two or three hours, was terminated from his position by Lancaster. (SSUF ¶ 16; Fuller Dep. 158:5-9). Lancaster informed plaintiff that he was terminated because of his absences and tardiness. (Fuller Dep. 158:12-15). However, plaintiff asserts that he was terminated because of his complaints of racial discrimination and because of Wal-Mart's failure to remedy the racial harassment to which plaintiff was subjected. (SSUF ¶ 17).

Plaintiff asserts that, as a result of the constant harassment by Brazil, Wal-Mart's failure and refusal to remedy the harassment, and his termination, plaintiff suffered physical and emotional distress. (SSUF ¶ 22). Such distress manifested itself in the form of stress, anxiety, humiliation, anger, insomnia, headaches, and depression. (SSUF ¶ 22).

Plaintiff filed a complaint in the Superior Court of Sacramento, alleging violations of the California Fair Employment and Housing Act ("FEHA") based upon racial harassment and

6

retaliation.  Plaintiff also asserted a claim for intentional
infliction of emotional distress.  Defendant removed the action
to this court on the basis of diversity jurisdiction.  On June 6,
2006, defendant filed the current motion for summary judgment, or
in the alternative, summary adjudication of the claims.

## STANDARD

Summary judgment is appropriate when it is demonstrated that
there exists no genuine issue as to any material fact, and that
the moving party is entitled to judgment as a matter of law.
Fed. R. Civ. P. 56©; <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144,
157 (1970).

Under summary judgment practice, the moving party

always bears the initial responsibility of informing
the district court of the basis of its motion, and
identifying those portions of "the pleadings,
depositions, answers to interrogatories, and admissions
on file together with the affidavits, if any," which it
believes demonstrate the absence of a genuine issue of
material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  "[W]here the
nonmoving party will bear the burden of proof at trial on a
dispositive issue, a summary judgment motion may properly be made
in reliance solely on the 'pleadings, depositions, answers to
interrogatories, and admissions on file.'"  <u>Id.</u> at 324.  Indeed,
summary judgment should be entered against a party who fails to
make a showing sufficient to establish the existence of an
element essential to that party's case, and on which that party
will bear the burden of proof at trial.  <u>Id.</u> at 322.  In such a
circumstance, summary judgment should be granted, "so long as
whatever is before the district court demonstrates that the

standard for entry of summary judgment, as set forth in Rule 56©,
is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the
burden then shifts to the opposing party to establish that a
genuine issue as to any material fact actually does exist.
Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
585-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S.
253, 288-289 (1968).  In attempting to establish the existence of
this factual dispute, the opposing party may not rely upon the
denials of its pleadings, but is required to tender evidence of
specific facts in the form of affidavits, and/or admissible
discovery material, in support of its contention that the dispute
exists.  Fed. R. Civ. P. 56(e).  The opposing party must
demonstrate that the fact in contention is material, i.e., a fact
that might affect the outcome of the suit under the governing
law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986),
and that the dispute is genuine, i.e., the evidence is such that
a reasonable jury could return a verdict for the nonmoving party,
Id. at 251-52.

In the endeavor to establish the existence of a factual
dispute, the opposing party need not establish a material issue
of fact conclusively in its favor.  It is sufficient that "the
claimed factual dispute be shown to require a jury or judge to
resolve the parties' differing versions of the truth at trial."
First Nat'l Bank, 391 U.S. at 289.  Thus, the "purpose of summary
judgment is to 'pierce the pleadings and to assess the proof in
order to see whether there is a genuine need for trial.'"

1    <u>Matsushita</u>, 475 U.S. at 587 (quoting Rule 56(e) advisory

2    committee's note on 1963 amendments).

3        In resolving the summary judgment motion, the court examines

4    the pleadings, depositions, answers to interrogatories, and

5    admissions on file, together with the affidavits, if any.  Rule

6    56©; <u>SEC v. Seaboard Corp.</u>, 677 F.2d 1301, 1305-06 (9th Cir.

7    1982).  The evidence of the opposing party is to be believed, and

8    all reasonable inferences that may be drawn from the facts placed

9    before the court must be drawn in favor of the opposing party.

10   <u>Anderson</u>, 477 U.S. at 255.  Nevertheless, inferences are not

11   drawn out of the air, and it is the opposing party's obligation

12   to produce a factual predicate from which the inference may be

13   drawn.  <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224,

14   1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898 (9th Cir. 1987).

15       Finally, to demonstrate a genuine issue, the opposing party

16   "must do more than simply show that there is some metaphysical

17   doubt as to the material facts. . . . Where the record taken as a

18   whole could not lead a rational trier of fact to find for the

19   nonmoving party, there is no 'genuine issue for trial.'"

20   <u>Matsushita</u>, 475 U.S. at 586-87, 106 S. Ct. at 1356.

21                              **ANALYSIS**

22   **A.   Fair Employment and Housing Act Claims**

23       Plaintiff brings claims under the Fair Employment and

24   Housing Act ("FEHA") for harassment on the basis of race and for

25   retaliation because he complained of race harassment.[4]

26   _____

27        [4]    In his complaint, plaintiff asserts a claim for
     "Discrimination/Retaliation Violation of FEHA."  However, the
28                                          (continued...)

                                   9

Defendants move for summary judgment on the ground that plaintiff
has not produced sufficient evidence to create a triable issue of
fact for violations of FEHA.  Because the antidiscrimination
objective and relevant wording of Title VII and § 1981 are
similar to those of FEHA, "California courts often look to
federal decisions interpreting these statutes for assistance in
interpreting the FEHA." Richards v. CH2M Hill, Inc., 26 Cal. 4th
798, 812 (2001).  California courts apply the McDonnell Douglass
burden shifting approach to claims brought pursuant to FEHA and
apply the same guiding legal principles.  See Brooks v. City of
San Mateo, 229 F.3d 917, 923 (9th Cir. 2000) (citing Beyda v.
City of Los Angeles, 65 Cal. App. 4th 511, 517 (Cal. Ct. App.
1998); Okoli v. Lockheed Tech. Operations Co., 36 Cal. App. 4th
1607, 1614 n.3 (Cal. Ct. App. 1995)).

### 1.   Hostile Work Environment Claims

Plaintiff contends that he was subject to a hostile work
environment in violation of FEHA based upon racially-offensive
comments made to him by co-worker Brazil.  FEHA makes it unlawful
for an employer to discriminate against a person in the terms,
conditions, or privileges of employment because of that person's
race.  Cal. Gov't Code § 12940(a) (West 2006).  To survive

---

[4](...continued)
basis of his claim is a harassment claim and a retaliation claim.
Further, plaintiff raises only a hostile work environment
argument in his opposition.  Therefore, the court will only
address these two alleged violations of FEHA.  To the extent that
plaintiff sought to bring a claim for discrimination, such a
claim is not supported by any evidence submitted by plaintiff,
and defendant's motion for summary judgment is GRANTED.

summary judgment on a claim of hostile work environment under

FEHA, plaintiff must raise a triable issue of fact as to whether

> (1) she was subjected to verbal or physical conduct
> because of her race, (2) the conduct was unwelcome, and
> (3) the conduct was sufficiently severe or pervasive to
> alter the conditions of plaintiffs employment and
> create an abusive working environment.

Manatt v. Bank of America, NA, 339 F.3d 792, 798 (9th Cir. 2003)

(quoting Kang v. U. Lim Am., Inc., 296 F.3d 810, 817 (9th Cir.

2002). Like Title VII, FEHA is not a general civility code. Id.

(citing Faragher v. City of Boca Raton, 524 U.S. 775, 788

(1998)). "Simple teasing, offhand comments, and isolated

incidents (unless extremely serious) will not amount to

discriminatory changes in the terms or conditions of employment."

Faragher, 524 U.S. at 788. Rather, "[a] hostile work environment

claim involves a workplace atmosphere so discriminatory and

abusive that it unreasonably interferes with the job performance

of those harassed." Brooks, 229 F.3d at 923. Therefore, in

order to survive a motion for summary judgment, plaintiff must

present evidence that his "workplace [was] permeated with

discriminatory intimidation . . . that [was] sufficiently severe

or pervasive to alter the conditions of his employment and create

an abusive working environment." Harris v. Forklift Sys., Inc.,

510 U.S. 17, 21 (1993); Fisher v. San Pedro Peninsula Hosp., 214

Cal. App. 3d 590, 608 (Cal. Ct. App. 1989). Further, "[t]he

working environment must both subjectively and objectively be

perceived as abusive." Fuller v. City of Oakland, 47 F.3d 1522,

1527 (9th Cir. 1995) (citing Harris, 510 U.S. at 21-22)).

The Supreme Court has warned that evidence of a hostile work

environment should not be viewed too narrowly; "[T]he objective

severity of harassment should be judged from the perspective of a
reasonable person in the plaintiff's position, considering 'all
the circumstances.'"   Oncale v. Sundowner Offshore Servs., Inc.,
523 U.S. 75, 81 (1998) (citing Harris, 510 U.S. at 23).  "The
real social impact of workplace behavior often depends on a
constellation of surrounding circumstances . . . which are not
fully captured by a simple recitation of the words used . . . ."
Id. at 81-82.  Such circumstances "may include the frequency of
the discriminatory conduct; its severity; whether it is
physically threatening or humiliating, or a mere offensive
utterance; and whether is unreasonably interferes with an
employee's work performance."  Beyda v. City of Los Angeles, 65
Cal. App. 4th 511, 517 (Cal. Ct. App. 1998) (quoting Harris, 510
U.S. at 23).  "The plaintiff must prove that the defendant's
conduct would have interfered with a reasonable employee's work
performance and would have seriously affected the psychological
well-being of a reasonable employee and that [he] was actually
offended."  Id. (quoting Fisher, 214 Cal. App. 3d at 609-10).
"[T]he required showing of severity or seriousness of the
harassing conduct varies inversely with the pervasiveness or
frequency of the conduct."  Ellison v. Brady, 924 F.2d 872, 878
(9th Cir. 1991) (citing King v. Board of Regents of Univ. of
Wisconsin Sys., 898 F.2d 533, 537 (7th Cir. 1990).

Defendant argues that plaintiff's hostile work environment
claim is based solely on Brazil's one-time use of a racial slur,
combined with questions to plaintiff about African Americans, and
that these assertions are insufficient to set forth a claim of
harassment as a matter of law.  However, plaintiff has produced

1  evidence that Brazil verbally harassed him on a consistent basis
2  throughout the entirety of his employment with Wal-Mart.
3  Plaintiff asserts that he worked with Brazil on a nearly daily
4  basis and that Brazil made derogatory and offensive racial
5  remarks on a nearly daily basis.  Because of the pervasive manner
6  of the harassment, plaintiff contends that he cannot recall all
7  of the specific remarks made to him by Brazil.  However,
8  plaintiff has pointed to numerous incidents where derogatory
9  questions were asked, offensive comments were made, and where an
10 offensive racial epithet was directed at him.  Further, plaintiff
11 has pointed to several occasions where he reported this conduct
12 to Wal-Mart management and no action was taken to remedy the
13 situation.  He also presents evidence that he informed Wal-Mart
14 management that the conduct was so distressing that he did not
15 want to come into work.  As such, plaintiff has presented
16 evidence to create a triable issue of fact regarding his claim of
17 harassment in violation of FEHA.  See Walker v. Ford Motor Co.,
18 684 F.2d 1355, 1359 (11th Cir. 1982) (upholding district court's
19 finding of a Title VII violation where defendant's personnel's
20 use of racially abusive language was "repeated," "continuous,"
21 and "prolonged," despite the plaintiff's objections and where the
22 language made plaintiff feel unwanted and uncomfortable in his
23 surroundings); Dee v. Vintage Petroleum, Inc., 106 Cal. App. 4th
24 30, 36-37 (Cal. Ct. App. 2003) (holding that there was a triable
25 issue of fact where plaintiff was subjected to an ethnic slur on
26 one occasion, was called derogatory names, was ordered to lie,
27 and blamed for tasks).  Therefore, defendant's motion for summary
28

13

judgment regarding plaintiff's hostile work environment claim
under FEHA is DENIED.

### 2.   Retaliation Claims

Plaintiff asserts that defendant retaliated against him for
complaining about Brazil's harassment by terminating his
employment with Wal-Mart.  Defendant asserts that plaintiff was
not terminated for his complaints, but rather due to his
tardiness and absences.

FEHA makes it unlawful for an employer to discriminate
against any of its employees because he has filed a complaint for
violations arising under FEHA.  Cal. Gov't Code § 12940(h) (West
2006).  To establish a case of retaliation, plaintiff must prove
(1) he engaged in a protected activity; (2) he suffered an
adverse employment action; and (3) there was a causal connection
between the two.  Yartzoff v. Thomas, 809 F.2d 1371, 1375 (9th
Cir. 1987) (citing Ruggles v. California Polytechnic State Univ.,
797 F.2d 782, 784 (9th Cir. 1986); Miller v. Fairchild Indus.,
Inc., 797 F.2d 727, 730 (9th Cir. 1986)).  Under McDonnell
Douglass, once plaintiff makes out a prima facie case of
retaliation, the burden shifts to the defendant to set forth a
legitimate, non-retaliatory reason for the adverse action.
Stegall v. Citadel Broadcasting Co., 350 F.3d 1061, 1066 (9th
Cir. 2003).  However, "[o]nly the burden of production shifts;
the ultimate burden of persuasion remains with the plaintiff."
Yartzoff, 809 F.2d at 1376 (citing Texas Dep't of Community
Affairs v. Burdine, 450 U.S. 248, 253 (1981)).  If defendant can
make this showing, the burden shifts back to the plaintiff to

14

show that the alleged explanation is a pretext for impermissible retaliation.  Yartzoff, 809 F.2d at 1377.

Defendant does not dispute that plaintiff can establish a prima facie claim of retaliation.  (Def.'s Reply, filed June 29, 2006, at 8).  However, defendant contends that it had a legitimate reason for terminating plaintiff.  At this stage in the burden-shifting analysis, defendant "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus."  Miller v. Fairchild Indus., Inc., 797 F.2d 727, 731 (9th Cir. 1986) (quoting Burdine, 450 U.S. at 257)).  Defendant presents undisputed evidence that plaintiff was absent 26 times and tardy 20 times during his employment with Wal-Mart.  Defendant also presents undisputed evidence that plaintiff received a final warning called a Decision Making Day Coaching and that plaintiff was absent at least five times after he received a final written warning regarding his attendance.  This showing substantiates defendant's explanation that plaintiff's employment was terminated due to attendance problems, and raises a genuine issue of fact as to whether defendant retaliated against plaintiff.  See Yartzoff, 809 F.2d at 1376-77.

Once a defendant carries the burden of sufficiently articulating a legitimate, non-retaliatory reason for an adverse employment action, "the legally mandatory inference of retaliatory discrimination arising from the plaintiff's prima facie case drops away."  Id. at 1377 (citing Burdine, 450 U.S. at 255 & n.10).  The burden then shifts back to the plaintiff "to

1  raise a genuine factual question whether [the defendant's] stated

2  reason is in reality a mere pretext." Miller, 797 F.2d at 732

3  (citing Lowe v. City of Monrovia, 775 F.2d 998, 1008 (9th Cir.

4  1985)). "To show pretext, the plaintiff is not necessarily

5  required to introduce evidence beyond that already offered to

6  establish [his] prima facie case." Id. Further, "[c]ourts have

7  recognized that in discrimination cases an employer's true

8  motivations are particularly difficult to ascertain," and

9  therefore, summary judgment is usually unsuitable. Id. (citing

10 United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S.

11 711, 716 (1983)); Yartzoff, 809 F.2d 1377; Lowe, 775 F.2d at

12 1009, as amended, 784 F.2d at 1407.

13        Plaintiff presents evidence that throughout his employment

14 with Wal-Mart, he complained to management about Brazil's

15 offensive conduct.  However, these complaints were not acted upon

16 and the conduct continued on a nearly daily basis.  Plaintiff

17 also presents evidence that shortly before he was terminated,

18 Azad warned him that if he continued to complain about the

19 problems he was having with Brazil, plaintiff would be

20 terminated.  On October 9, 2003, plaintiff presents evidence that

21 Brazil once again harassed him and that plaintiff almost

22 immediately reported the conduct to Azad.  Plaintiff was

23 terminated from his position that afternoon.  Viewing the

24 evidence in the light most favorable to plaintiff and resolving

25 all inferences in his favor, there is a genuine issue of material

26 fact regarding defendant's motive in terminating plaintiff's

27 employment with Wal-Mart.  As such, defendant's motion for

28

16

1  summary judgment regarding plaintiff's retaliation claim under

2  FEHA is DENIED.

3  **B.    Intentional Infliction of Emotional Distress**

4      Defendant requests the court to grant summary judgment on

5  plaintiff's claim for intentional infliction of emotion distress.

6  "The elements of a cause of action for intentional infliction of

7  emotional distress are (1) outrageous conduct by the defendant;

8  (2) emotional distress; (3) severe emotional distress; and (4)

9  actual and proximate causation of the emotional distress."

10  Fisher, 214 Cal. App. 3d at 617 (quoting Molko v. Holy Spirit

11  Assn., 46 Cal. 3d 1092, 1120 (1986)).  Where plaintiff

12  establishes a viable claim for discrimination, retaliation, or

13  harassment under FEHA, a claim of intentional infliction of

14  emotional distress will usually also lie because, by definition,

15  a "harassment in the workplace is outrageous conduct as it

16  exceeds all bounds of decency usually tolerated by a decent

17  society."  See id.

18      Plaintiff did not address this claim in his opposition.  As

19  such, defendant argues that this claim should be dismissed.

20  However, in its moving papers, defendant "concedes that if the

21  Court finds that an issue of fact exist as to plaintiff's

22  discrimination and wrongful termination claims, then plaintiff's

23  cause of action for intentional infliction of emotional distress

24  will also remain a viable claim." (Def.'s Mem. of P.&A. in Supp.

25  of Mot. for Summ. J., filed June 6, 2006, at 22).  Because, the

26  court has found that plaintiff has raised triable issues of fact

27  as to his harassment and retaliation claims, plaintiff has also

28  raised triable issues of fact as to defendant's outrageous

1   conduct for the purposes of his intentional infliction of

2   emotional distress claim.  See Livitsanos v. Superior Court, 2

3   Cal. 4th 744, 754-55 (1992); Alcorn v. Anbro Eng'g, Inc., 2

4   Cal.3d 493 (1970) (finding triable issue of fact for claim of

5   intentional infliction of emotion distress where racial insult

6   was an aggravating factor).  Further, plaintiff presents evidence

7   that defendant's conduct caused him to suffer physical and

8   emotional distress, which manifested itself in the form of

9   stress, anxiety, humiliation, anger, insomnia, headaches, and

10  depression.  Therefore, plaintiff has presented sufficient

11  evidence to raise a triable issue of fact regarding his claim for

12  intentional infliction of emotional distress.  Defendant's motion

13  for summary judgment regarding this claim is DENIED.

14  **C.   Punitive Damages**

15       Finally, defendant moves to strike plaintiff's request for

16  punitive damages.  Pursuant to California Civil Code § 3294, an

17  employer is only liable for punitive damages where

18           the employer had advanced knowledge of the unfitness of
             the employee and employed him or her with a conscious
19           disregard of the rights or safety of others or
             authorized or ratified the wrongful conduct for which
20           the damaged are awarded or was personally guilty of
             oppression, fraud, or malice.
21

22  Cal. Civ. Code § 3294(b) (West 2006).  Section 3294 further

23  specifies that in regards to a corporate employer, "the advance

24  knowledge and conscious disregard, authorization, ratification,

25  or act of oppression, fraud or malice must be on the part of an

26  officer, director, or managing agent of the corporation."  Id.  A

27  managing agent for purposes of this section is an employee who

28  "exercise[s] substantial discretionary authority over decisions

                                    18

that ultimately determine corporate policy." <u>White v. Ultramar,</u>
<u>Inc.</u>, 21 Cal. 4th 563, 577 (1999) (holding that "supervisors who
have no discretionary authority over decisions that ultimately
determine corporate policy would not be considered managing
agents even though they may have the ability to hire or fire").

Defendant presents evidence that Azad is not an officer or
director of Wal-Mart.  (Decl. Of Mehri Azad ("Azad Decl."), filed
June 6, 2006, ¶ 14).  Defendant also presents evidence that,
although Azad had the authority to hire and fire other employees,
she had no input in establishing, revising, or determining
corporate policies or procedures.  (<u>Id.</u> ¶ 15).  Finally,
defendant presents evidence that Azad, as a store manager, does
not have discretion to alter or deviate from corporate policies
and procedures in any form or manner.  (<u>Id.</u> ¶ 16).  Plaintiff
offered no response, by way of evidence or argument, to
defendant's evidence that Azad was not an officer, director, or
managing agent of defendant corporate employer.  Therefore,
defendant's motion to strike plaintiff's prayer for punitive
damages is GRANTED.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary
judgment or, in the alternative, summary adjudication is DENIED
and defendant's motion to strike is GRANTED.

IT IS SO ORDERED.

DATED: July 17, 2006

/s/ Frank C. Damrell Jr.
FRANK C. DAMRELL, Jr.
UNITED STATES DISTRICT JUDGE

19